UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CAROLINE NARDINO on behalf of herself and
all others similarly situated,

                       Plaintiff,

          -against-

CREDIT CONTROL, LLC,

                     Defendant.
-------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 17-03772 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.   PRELIMINARY STATEMENT**

Plaintiff Caroline Nardino ("Plaintiff") commenced this lawsuit on February 3, 2017 in the Supreme Court of the State of New York, County of Suffolk, by filing a Summons with Notice against debt-collector Defendant Credit Control, LLC ("Credit Control" or "Defendant"). *See* Summons with Notice, Index No. 602192/2017 ("Summons") [DE 1-1]. Defendant removed the action to this Court on June 22, 2017. *See* Notice of Removal [DE 1]. Thereafter, on June 26, 2017, Plaintiff filed a formal Complaint on behalf of herself and all others similarly situated. *See* Complaint ("Compl.") [DE 6]. Plaintiff alleges that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., based on abusive, deceptive, or misleading debt collection practices in connection with a debt collection letter which Defendant sent her about a purportedly outstanding debt (the "Collection Letter"). *See generally* Compl. The Collection Letter is attached to the Complaint as Exhibit A. Plaintiff originally asserted six causes of action, the third of which alleges that the Collection Letter did not properly identify the creditor or the entity on whose behalf Defendant was attempting to collect the debt. Compl. ¶¶ 29-30.

On April 30, 2018, Plaintiff withdrew all but one of the claims and moved for class certification, pursuant to Fed. R. Civ. P. 23.  *See* Plaintiff's Motion for Class Certification ("Pl.'s Mot. for Class Cert.") [DE 21].  The third cause of action is the only claim remaining in this case.  In it, Plaintiff asserts that the Collection Letter did not properly identify the creditor, in violation of 15 U.S.C. § 1692e, 1692(e)(2)(A) and 1692e(10).  The Defendant opposed Plaintiff's Motion on May 18, 2018 and cross-moved to dismiss the Complaint for lack of standing.  *See* Defendant's Cross-Motion to Dismiss ("Def.'s Cross-Mot. to Dismiss") [DE 23].  Plaintiff opposed the Cross-Motion and attached an affidavit signed by Plaintiff's bankruptcy attorney, Richard Jacoby, Esq., which attempts to explain the reasons why Plaintiff did not disclose her FDCPA claims in her Chapter 7 petition.  *See* Plaintiff's Opposition to Defendant's Cross-Motion to Dismiss ("Plaintiff's Opp'n. to Cross-Mot.") [DE 25]; *see also* May 31, 2018 Affidavit of Richard Jacoby, Esq. ("Jacoby Aff.") attached as Exhibit 1 to Pl.'s Opp'n to Cross-Mot. [DE 25-1].  Defendant then moved to strike the Jacoby Affidavit, arguing that the Affidavit contains inadmissible hearsay.  *See* Def.'s Mot. to Strike [DE 27].  Judge Spatt referred the pending motions to this Court for a Report and Recommendation.  *See* September 10, 2018 Referral Order [DE 36].  For the reasons which follow, this Court respectfully recommends to Judge Spatt that (1) Defendant's Motion to Strike be DENIED, (2) Defendant's Motion to Dismiss be GRANTED, and (3) Plaintiff's Motion for Class Certification be DENIED as MOOT.

II. **BACKGROUND**

On or about February 3, 2016, Defendant sent Plaintiff the Collection Letter stating that the letter "is from a debt collector and is an attempt to collect a debt."  Compl. ¶ 7 and Ex. A [DE 6-1].  The Collection Letter shows a balance of $607.25 due and owing to Kohl's

2

Department Store, Inc. ("Kohl's") on Plaintiff's Capital One credit account. Compl. ¶ 9. It lists Kohl's as Defendant's client and Capital One as the original creditor. *Id.* and Ex. A.

The following month, on March 7, 2016, Plaintiff filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the Eastern District of New York. *See* Pl.'s Mot. for Class Cert. at 4; *see also* Declaration of Mitchell L. Pashkin, Esq. ("Pashkin Decl.") [DE 21-2] attached to Pl.'s Mem. of Law in Support of Mot. to Certify Class ("Pl.s' Mem.") [DE 21-1] ¶ 4; Pashkin Decl., Ex. D. A copy of Plaintiff's Voluntary Petition for Bankruptcy is attached to the Pashkin Declaration as Exhibit D. The form petition completed by the Plaintiff contains multiple sections directed to various aspects of the petitioner's financial condition. Specifically, Official Form 106Sum – "Summary of Your Assets and Liabilities and Certain Statistical Information" – asked Plaintiff for information concerning, among other things, any property, liabilities, income and expenses, taxes, loans, etc. *See* Pashkin Decl., Ex. D at 8-9. The first sub-category under Form 106Sum is "Schedule A/B: Property" which is a five-page compilation of questions to be answered about the Plaintiff's assets. *Id.* at 10-14. Questions 33, 34 and 35 of Schedule A/B appear as follows:

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ■ No
    ☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ■ No
    ☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes. Give specific information..

The document reflects that Plaintiff responded "No" to each question.

On April 14, 2016, the bankruptcy trustee assigned to Plaintiff's petition, Kenneth Kirschenbaum, issued a Report of No Distribution, indicating that Plaintiff possessed no distributable assets. *See* April 14, 2016 Electronic Entry on EDNY Bankruptcy Court Docket

3

Sheet, attached as Ex. G to the Pashkin Decl.  Thereafter, on June 15, 2016, relying on the Report of No Distribution, the Bankruptcy Court entered an Order of Discharge and Final Decree, releasing Plaintiff from liability for certain debts and closing Plaintiff's bankruptcy case. Pashkin Decl., Ex. E.

Notably, during the pendency of Plaintiff's bankruptcy proceeding, Plaintiff did not amend her petition to disclose any potential legal claims.  Nevertheless, following the June 15, 2016 Order of Discharge and Final Decree, Plaintiff filed three lawsuits, culminating with this litigation.  Plaintiff commenced the first action on October 4, 2016 against Collins Asset Group, LLC in connection with a January 22, 2016 debt collection letter.  *See* Eastern District of New York CM ECF System, *Nardino and Vouvounas v. Collins Asset Group, LLC*, CV 16-05532 (JMA).  That case settled early on in the proceedings.  Almost four months after Plaintiff brought the *Collins* action, she commenced another litigation in the Eastern District on October 7, 2016 against FBCS, Inc. and CKS Financial, LLC in connection with a February 3, 2016 debt collection letter.  *See Nardino v. FBCS, Inc. and CKS Financial, LLC*, CV 16-5626 (LDW). Within six weeks and prior to any answer being filed, that case was voluntarily dismissed.

With respect to the instant litigation, Plaintiff originally filed a Summons with Notice in the Supreme Court of the State of New York, County of Suffolk, against Credit Control, LLC. Defendant removed the case to the federal court for the Eastern District of New York on June 22, 2017.  *See* DE 1 and 1-1.  Plaintiff's counsel thereafter filed an actual Complaint on June 26, 2017 and presented this case as a putative class action, asserting class allegations pursuant to Fed. R. Civ. P. 23.  *See* Compl. ¶¶ 42-49 [DE 6].  The Complaint alleges various violations of the FDCPA in connection with debt collection letters which Plaintiff received prior to filing for Chapter 7 relief in the Bankruptcy Court.

4

Plaintiff now seeks to certify the class to include, *inter alia*, persons to whom Defendant sent collection letters from February 3, 2016 to the present, seeking to collect a past due debt. *See id.* ¶ 43(I), (III).  Defendant contends that before the Court reaches the merits of Plaintiff's motion for class certification, it must dismiss the matter because Plaintiff lacks standing to pursue her claims insofar as she failed to disclose them in her bankruptcy proceeding.

### III.   DISCUSSION

Because Defendant's Motion to Dismiss implicates the Court's subject matter jurisdiction, the Court will first address the issues of standing.

#### A.   Subject Matter Jurisdiction

##### 1.   Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Roth v. Solomon & Solomon, P.C.*, No. 17-CV-0868, 2018 WL 718402, at *2 (E.D.N.Y. Feb. 5, 2018) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may refer to materials outside the pleadings.  *See Morrison v. Nat'l Austl. Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) (citing *Makarova,* 201 F.3d at 113); *Samele v. Zucker*, 324 F. Supp. 3d 313, 321-22 (E.D.N.Y. 2018).  "Though the Court must accept the factual allegations contained in the [Complaint] as true, it will not draw argumentative inferences in favor of Plaintiff; subject matter jurisdiction must be shown affirmatively." *Roth*, 2018 WL 718402, at *2.  It is Plaintiff's burden to establish that she has standing, and, by extension, that subject matter jurisdiction exists. *See Romeo v. FMA All., Ltd.,* No. 15-CV-6524, 2016 WL 3647868, at *4 (E.D.N.Y. June 30, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## 2. *Applicable Legal Principles*

### a. **Debtor's Duty to Disclose**

"In general, the price of a discharge in bankruptcy is high, and the disclosure requirements of the Bankruptcy Code and Rules are onerous indeed." *Romeo*, 2016 WL 3647868 (quoting *In re Arana*, 456 B.R. 161, 169 (Bankr. E.D.N.Y. 2011)) (internal quotation marks omitted). "In this regard, pursuant to 11 U.S.C. § 521(a)(1), a debtor seeking the benefits of bankruptcy is under a duty to disclose . . . all of his or her interests and property rights." *Romeo*, 2016 WL 3647868 at *2; *see also Arana*, 456 B.R. at 169 ("An individual debtor must 'disclose *all* his interests at the commencement of a case . . . .'") (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008)). "[T]his duty includes an obligation to disclose any legal claims possessed by the debtor." *Romeo*, 2016 WL 3647868 at *2; *see also Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 489 (E.D.N.Y. 2013) ("In addition, the debtor must disclose . . . all causes of action owned by the debtor or arising from the property of the estate.") (internal quotation marks and citation omitted).

"The duty to disclose is a continuing one and does not end with the filing of the bankruptcy petition." *In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2012). To ensure continued compliance, a debtor "may amend '[a] voluntary petition, list, schedule, or statement . . . as a matter of course before the case is closed." *Arana*, 456 B.R. at 169 (quoting Fed. R. Bankr. P. 1009(a)). "Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the bankruptcy system." *In re Lowery*, 398 B.R. at 515. "Because the bankruptcy court, trustees, and creditors rely on the information disclosed by a debtor, the importance of full disclosure cannot be overemphasized." *Id.*

"[F]ew courts have addressed the level of specificity with which debtors must describe assets [on the schedule] in order to comply with 11 U.S.C. § 521(a)(1)." *Romeo*, 2016 WL 3647868, at *6 (quoting *Tilley v. Anixter Inc.*, 332 B.R. 501, 509 (Bankr. D. Conn. 2005)). Indeed, there are no bright line rules concerning the degree of specificity required in bankruptcy disclosures. *Roth*, 2018 WL 718402, at *4. "Instead, what is required is reasonable particularization under the circumstances." *Id.* (internal quotation marks and citation omitted). Specifically, a debtor "must do enough itemizing to enable the trustee to determine whether to investigate further." *Romeo*, 2016 WL 3647868, at * 6 (quoting *In re Mohring*, 142 B.R. 389, 395 (Bankr. E.D. Ca. 1992), *aff'd*, 153 B.R. 601 (B.A.P. 9th Cir. 1993), *aff'd*, 24 F.3d 247 (9th Cir. 1994)). As noted by another court in this District, "courts typically look at whether the schedule gives the trustee enough information about the claim so he or she can decide if the claims is worth pursuing." *Eun Joo Lee*, 926 F. Supp. 2d at 489 (finding debtor's disclosure of FDCPA claim sufficient for bankruptcy trustee to have been able to make an educated decision as to what claim(s) to bring against which defendants where debtor disclosed putative FDCPA claim but only identified the underlying creditor and not the debt collector who sent the offending debt collection letter as possible defendants); *see also Roth*, 2018 WL 718402, at *4-5 (finding debtor's disclosure of FDCPA claim in amended petition sufficient to give bankruptcy trustee notice as to the basic underlying factual scenario where scheduled "FDCPA actions" valued at $2,000).

    **b. Standing to Pursue Prepetition Claims**

"When a bankruptcy petition is filed, an estate is created, which encompasses every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." *Romeo*, 2016 WL 3647868, at *5 (internal quotation marks and citation omitted).

During the pendency of a Chapter 7 case, only the Chapter 7 trustee may administer property of the estate, including bringing actions on behalf of the estate. *Arana*, 456 B.R. at 169. When a potential claim is disclosed by a debtor, the trustee investigates the value of the claim and determines whether the trustee should prosecute, settle or abandon the claim, or arrange for the debtor to prosecute the claim in exchange for the estate receiving a share of the proceeds. *Romeo*, 2016 WL 3647868, at * 5. Generally, at the conclusion of the bankruptcy case, properly scheduled estate property that has not been administered by the trustee during the pendency of the action returns to the debtor. 11 U.S.C. § 554(c); *see Chartschlaa*, 538 F.3d at 122 ("properly scheduled estate property that has not been administered by the trustee normally returns to the debtor when the bankruptcy court closes the case"). In contrast, when a potential legal claim is not disclosed by the debtor, it remains the property of the bankruptcy estate even after the case has closed. 11 U.S.C S 554(d); *see Chartschlaa*, 538 F.3d at 122 ("undisclosed assets automatically remain property of the estate after the case is closed"); *Arana*, 456 B.R. at 169 ("unless [an undisclosed action] is administered or abandoned by the trustee, the action remains property of the estate forever") (quoting *In re Lopez*, 283 B.R. 22, 28 (B.A.P. 9th Cir. 2002)).

    3.    *Application*

Applying the standards outlined above, the Court finds that Plaintiff lacks standing to prosecute this action. In the Court's view, the record unequivocally leads to the conclusion that Plaintiff failed to comply with her duty to disclose under the Bankruptcy Code. Plaintiff failed to disclose any of the FDCPA claims commenced in the months following her bankruptcy proceeding — including, and particularly, the instant action — even though all such claims stemmed from prepetition collection letters. Unlike the cases cited above which examine whether a debtor's disclosure of a legal claim is sufficient under the circumstances, the instant

8

case concerns Plaintiff's omission, altogether, of her FDCPA claims from her Chapter 7 petition, including the claims on which the instant action is based. Plainly, Plaintiff's undisclosed claims remain property of the estate and her rights with respect to those claims have been extinguished. Consequently, Plaintiff has no standing to prosecute the instant action.

*Romeo*, on which Defendant heavily relies, provides applicable guidance. Therein, Judge Spatt found that plaintiff Romeo ("Romeo") lacked standing to bring an FDCPA claim where he commenced prepetition actions one month after filing for Chapter 7 bankruptcy protection. *Romeo*, 2016 WL 3647868, at *9. Although Romeo amended his bankruptcy petition — notably after the trustee issued a Report of No Distribution indicating that Romeo possessed no distributable assets — his amendment, which disclosed only one claim without any supporting details, was insufficient to satisfy his duty of disclosure. *Id.* In the current action, Plaintiff's omission of her FDCPA claims runs all the more afoul of the law requiring disclosure. Plaintiff made no effort whatsoever to comply with her duty to disclose. At no time during the pendency of her bankruptcy proceeding did she disclose any claims. Indeed, Plaintiff never amended her Chapter 7 petition to reflect any of her FDCPA claims, even after the Trustee issued a Report of No Distribution indicating that Plaintiff possessed no distributable assets. Then, less than four months after her bankruptcy case was closed, Plaintiff commenced actions based on prepetition FDCPA claims.

Plaintiff does not dispute the law concerning a debtor's comprehensive duty to disclose in a bankruptcy petition, nor the effect of nondisclosure on a debtor's ability and standing to bring a prepetition claim after the conclusion of a bankruptcy. Rather, in opposition to Defendant's Cross-Motion to Dismiss, Plaintiff submits the Jacoby Affidavit which states in sum and substance that Plaintiff's bankruptcy trustee, Kenneth Kirschenbaum, does not allow speculative

claims to be listed on the schedules and does not want FDCPA claims to be listed insofar as they are *de minimis* and of no benefit to the estate. *See* Pl.'s Opp. to Def.'s Mot. to Dismiss, Ex. A.

### a. The Jacoby Affidavit

Before the Court assesses Plaintiff's arguments, it must evaluate Defendant's Motion to Strike to determine whether it may consider the Jacoby Affidavit in the first instance. Although a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). A statement is hearsay if it is made by a declarant who is not testifying in the current trial or hearing and where a party offers it to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). A statement is not hearsay if it is offered for a purpose other than to establish the truth of the matter asserted. *See id.* One well-recognized such purpose is effect on the listener. *United States v. Gotti*, 475 F. Supp. 2d 395, 397 (S.D.N.Y. 2006) ("[i]t is well established . . . that statements offered for their effect on the listener are non-hearsay").

Here, the Jacoby Affidavit states Trustee Kenneth Kirschenbaum's purported policy and preferences related to FDCPA claim disclosures in a debtor's bankruptcy petition, as follows: (1) "Kenneth Kirschenbaum does not allow these types of speculative claims to be listed on the schedules" and (2) "he does not want them listed." *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss, Ex. A., ¶¶ 3,4. To the extent Plaintiff is asserting that these are actual statements made by Kenneth Kirschenbaum, the Jacoby Affidavit appears to contain inadmissible hearsay. Paragraph 4 of the Jacoby Affidavit [incorrectly marked paragraph 3] adds some clarity and seems to eliminate any doubt that the contents of the affidavit constitute inadmissible hearsay. *Id.* at ¶ 4. Paragraph 4 states "it was for this reason the claim was not listed on [Plaintiff's]

10

schedules." *Id.* As such, the Jacoby Affidavit does not declare Kenneth Kirschenbaum's policy preferences to establish their truth. Rather, the Jacoby Affidavit poses Kenneth Kirschenbaum's policy preferences as a reason why Plaintiff's attorney, and in turn Plaintiff, did not disclose Plaintiff's FDCPA claims — in other words, the effect on the listener. Therefore, to the extent the Jacoby Affidavit contains Kenneth Kirschenbaum's actual statements, which the Court is not deciding one way or the other, the Court finds that they are not offered for the truth of the matter asserted, but rather for their effect on the listener. On that basis, the Court can and will consider the Jacoby Affidavit.

Plaintiff argues that since she "did not list her FDCPA causes of action on her schedules per a policy directive of the assigned trustee, [her] disclosure . . . was not materially incomplete or inaccurate and did not prevent the trustee from investigating her FDCPA claims." Pl.'s Opp'n to Def.'s Mot. to Dismiss at 2. In support of her argument, Plaintiff relies on *Leahey v. SP Ctr., LLC*, 579 B.R. 13, 15 (S.D.N.Y. 2017), without citing to the pertinent reporter or corresponding page numbers. More troubling is the fact that rather than explain how *Leahey* supports Plaintiff's argument that a bankruptcy disclosure is not materially incomplete or inaccurate where a Plaintiff does not list legal claims based on the policy of the bankruptcy trustee, Plaintiff leaves the Court to decipher his argument. *Id.* at 2-4. In fact, Plaintiff copied a full two-page, single-spaced excerpt from the *Leahy* decision without ever identifying the pages from which the excerpt was drawn – leaving the Court to search for that information. Plaintiff makes no attempt to provide any meaningful legal reasoning; rather, counsel has pasted more than half the cited opinion without any connection to a rationale. What is even more puzzling is that *Leahey* does not at all stand for the proposition that a bankruptcy schedule is not materially

11

incomplete or inaccurate where a Plaintiff does not list legal claims based on the policy of the bankruptcy trustee.

*Leahey* concerns whether a plaintiffs' non-disclosure of a claim filed after her petition for bankruptcy protection was a good faith mistake sufficient to except her claim from the doctrine of judicial estoppel. 579 B.R. at 18. Under judicial estoppel, a party may not assert a factual position in one legal proceeding that is contrary to a position which that party successfully advanced in another proceeding. *Id.* at 17 (citing *New Hampshire v. Marine*, 532 U.S. 742, 750 (2001). Notwithstanding that *Leahey* does not address subject matter jurisdiction or a trustee's policy against making certain disclosures in a bankruptcy petition, it is noteworthy that the plaintiffs in *Leahey* offered sworn evidence indicating they believed their claim had been disclosed in their bankruptcy case — and they twice sought to amend their bankruptcy petition when they realized their claim had not been disclosed. Here, based on the available record, Plaintiff made no effort to amend her bankruptcy petition, nor is there any evidence that she had a good faith belief that her FDCPA claims had been disclosed to her bankruptcy trustee.

The Court finds no reason to set aside the law governing a debtor's disclosure obligation relating to legal claims in a bankruptcy proceeding and the effect of non-disclosure on a debtor's ability to subsequently bring an action asserting those claims. As set forth above, the law is clear that nondisclosed claims remain the property of the bankruptcy estate. Plaintiff has offered no legal argument as to why she nevertheless has standing to bring the instant action. The Jacoby Affidavit appears to offer an explanation for Plaintiff's omission. However, in the absence of authority suggesting that Plaintiff's explanation constitutes good grounds to set aside the law governing legal claim disclosures in a bankruptcy petition and the effect of nondisclosure, Plaintiff's explanation as such is not relevant. Plaintiff has no standing to prosecute the instant

claim insofar as it remains the property of the bankruptcy estate. Therefore, the Court has no subject matter jurisdiction over this litigation.

Notably, the Court would have come to the same conclusion even if it had granted Defendant's Motion to Strike the Jacoby Affidavit. Without the Jacoby Affidavit, Plaintiff's actions are equally noncompliant with a debtor's disclosure obligations, although they are perhaps more palatable. In any event, the Court finds no reason to avoid the applicable law here. The Court will not ignore the law because of Kenneth Kirschenbaum's purported policy that speculative claims be omitted from a bankruptcy petition. By law, a bankruptcy estate includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative." *Romeo*, 2016 WL 3647868, at *5. A debtor's duty to disclose is therefore comprehensive and necessarily includes legal claims that one might consider speculative.

Because the Court finds that Plaintiff lacks standing to pursue the instant action insofar as it belongs to the bankruptcy estate, the Court need not analyze whether Plaintiff is similarly judicially estopped from bringing the instant action.

### b. Plaintiff's Request for Leave to Move to Re-Open Her Bankruptcy

The Court notes that as an alternative to dismissal, Plaintiff requests leave to move to re-open her bankruptcy to amend her schedules to include her FDCPA claims. In support of her application, Plaintiff relies on *In re Moyette*, 231 B.R. 494 (E.D.N.Y. 1999), and *BPP Illinois, LLC v. Royal Bank of Scotland Grp., PLC*, No. 13-CV-638 JMF, 2015 WL 6143702, at *10 (S.D.N.Y. Oct. 19, 2015), *aff'd*, 859 F.3d 188 (2d Cir. 2017). Once again, Plaintiff includes belabored block quotations without any explanation, application, or connected legal reasoning.

In any event, the cases Plaintiff cites are inapposite. In *Moyette*, Judge Spatt countenanced the general rule that a desire to amend a schedule to include additional creditors

13

constitutes sufficient cause to re-open a no asset bankruptcy. *In re Moyette*, 231 B.R. at 497. Unlike the debtors in *Moyette*, however, Plaintiff is not seeking to re-open her bankruptcy to include additional creditors. Indeed, a review of Plaintiff's Chapter 7 petition makes clear that Plaintiff disclosed Credit Control, Kohl's and Capital One — all possible creditors for the claims on which the instant action is based. *See* Pashkin Decl., Ex. D. Rather, Plaintiff seeks to add her FDCPA legal claims, all of which were not disclosed to the Bankruptcy Court while Plaintiff's bankruptcy was open.

In *BPP Illinois, LLC*, the court was concerned that dismissing the case outright might give defendants, whose alleged illegal actions drove plaintiffs into bankruptcy, a significant windfall. *BPP Illinois, LLC*, 2015 WL 6143702, at *10. Therefore, the court granted plaintiffs leave to re-open their bankruptcy action to empower the bankruptcy estate to decide whether to pursue plaintiffs' previously undisclosed claim. *Id.* However, *BPP Illinois, LLC* concerns plaintiffs' claim that defendants engaged in misconduct, including manipulating the interest rate metric for plaintiffs' $66 million loan, which drove the plaintiffs into bankruptcy. *Id.* Understandably, the court was concerned with giving the defendants a significant windfall. Such concerns are not part of the instant action which is ultimately based on the Collection Letter seeking to collect at $607.25 debt. Here, Defendant's letter cannot be said to have driven Plaintiff into bankruptcy. As such, there is no basis for the Court to be concerned with a "significant windfall" in Defendant's favor, nor is there any reason to stay the action so that Plaintiff can move to re-open her bankruptcy.

## IV. CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Spatt that: (1) Defendant's Motion to Strike be DENIED; (2) Defendant's Motion to Dismiss be GRANTED; and (3) Plaintiff's Motion for Class Certification be DENIED as MOOT in light of the Court's recommendation to dismiss the Complaint.

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joan Spatt, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), cert. denied, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED:**

Dated: Central Islip, New York
       March 26, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate